UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN JAMES McNELIS and LESLIE D. WHITE,<br><br>                    Plaintiffs,<br><br>v.<br><br>STEPHEN CRAIG,<br><br>                    Defendant. | Case No. 1:12-cv-00007-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendant's Motion for Summary Judgment, (Dkt. 158), and Plaintiffs' Motion for Contempt and Sanctions, (Dkt. 168). The parties have briefed the motions and they are ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. In the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record before this Court. Dist. Idaho L. Rule 7.1(d).

## FACTS

This case stems from the execution of a search warrant obtained via the use of allegedly falsified evidence. After adjudication of several motions to dismiss, the judicial deception claim against Officer Stephen Craig in his individual capacity remains for adjudication. The warrant arises from events beginning in September of 2009, when the Ada County Narcotics Unit received a tip that marijuana plants were growing behind a berm in the back yard of Plaintiff Brian McNelis's residence. The tipster claimed to have made this observation some weeks previously, on August 21, 2009.

Ada County Deputy Officer Stephen Craig conducted surveillance of the residence, located at 2830 South Cloverdale Road, in Boise, Idaho 83709, in late September 2009, but determined that there was nothing growing in the described area. On December 29, 2009, Craig represented he removed refuse from a trash can placed out in front of "2830 Cloverdale Road." In his search warrant affidavit, Craig indicated that December 29, 2009, was the day "determined to be the normal day for trash pick-up according to BFI." Upon examining the trash contents, Craig identified clippings of suspected marijuana plans, for which a later field test produced a presumptive positive for marijuana. Craig indicated also he "located mail bearing the name Brian McNelis with the address of 2830 Cloverdale, Boise, Idaho 83709."

On January 6, 2010, Craig averred he conducted a second trash pull, removing refuse "from a trash can that was placed out in front of 2830 Cloverdale Road for disposal." Craig alleges he pulled the trash during his night shift between January 5th and January 6th, and that January 6 was determined to be the normal day for trash pick-up

according to BFI. He again removed clippings of suspected marijuana plants, for which a field test produced a presumptive positive result for marijuana. Craig indicated also that he removed mail a second time, bearing the name Brian McNelis with the address of 2830 Cloverdale, Boise, Idaho 83709.

Later on the morning of January 6, 2010, Craig presented an affidavit in support of a search warrant for the McNelis residence to an Ada County Magistrate Judge containing the above information. A search warrant was issued on the morning of January 6, 2010, and the search was conducted that same day, at approximately 1:00 p.m. While at the McNelis residence, police allegedly observed marijuana plant material being thrown out of a bathroom window. They also found a marijuana grow operation in the garage as well as suspected methamphetamine and processed marijuana in the master bedroom. McNelis was arrested and charged with various drug-related crimes, including manufacturing of a controlled substance and possession of a controlled substance with intent to distribute. White also was charged with crimes.

McNelis moved to suppress the fruits of the search, alleging that the evidence submitted in support of the warrant was false. Specifically, McNelis argued that Deputy Craig had falsified his descriptions of the timing and manner in which he conducted the trash pulls on December 29, 2009, and January 6, 2010. Ada County District Judge Timothy Hansen conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), at which McNelis testified, as did White, White's daughter, and a friend, Michael Bowlin. Their collective testimony contradicted the statements in Deputy Craig's

affidavit and, if credited, suggested that the trash pulls could not have been conducted in the manner described in the search warrant affidavit.

At the hearing, the testimony given by McNelis, White, and White's daughter indicated McNelis and White were not at home between December 28, 2009, and December 30, 2009, and they did not set their trash out before leaving. McNelis and White stated they kept their trash behind a locked gate in the backyard, and typically set their trash out in the early morning on the day of trash pick-up, which is Wednesday mornings, and that their trash is picked up by Allied Waste.

Testimony from White, McNelis, and Bowlin provided graphic detail about the contents of the trash prior to the trash pick-up on the morning of January 6, 2010. Apparently, the three of them cleaned out the contents of a chest freezer full of meat, fish, and fruit, which they placed, unbagged, into the trash cans. The trash can was allegedly full and overflowing, with the bagged trash on the bottom of the heap. McNelis testified he did not put the trash can out at the curb until sometime between 7:15 a.m. the morning of January 6, 2010, and that it was so full he needed assistance to roll it to the curb.

In a Memorandum Decision issued on April 15, 2011, Judge Hansen made the following determinations: 1) the search warrant included false information with respect to the manner and dates upon which the marijuana clippings and mail were retrieved from Defendant's trash can; 2) the false information was included either intentionally or with reckless disregard for the truth, particularly with respect to the trash pull that allegedly occurred on January 6, 2010; and 3) probable cause for the issuance of the search warrant would not have existed absent the false statements in Deputy Craig's affidavit.

Accordingly, all evidence obtained as a result of the execution of the search warrant was excluded.

Ada County filed a motion to reconsider the order suppressing the evidence, which was denied. Thereafter the charges against McNelis were dismissed. The County also elected to drop the parallel charges against White. Plaintiffs filed a lawsuit in this Court on January 5, 2012. They were initially represented by counsel, but now are appearing pro se.

Craig disputes the testimony introduced at the suppression hearing, indicating in his affidavit before the Court that he pulled trash from in front of the McNelis residence on the evening of December 29, 2009, and the early morning of January 6, 2010. Craig does admit, however, that there were errors in his affidavit, namely that he forgot to type the word "South" before Cloverdale in the affidavit, and continuously referred to the residence at 2830 Cloverdale, when it should have specified 2830 South Cloverdale; he misrepresented the name of the trash company as BFI rather than Allied Waste; and he erroneously stated that December 29, 2009 was the normal day for trash pick-up, when December 30, 2009, was the regularly scheduled Wednesday pick-up. In other words, he should have indicated he pulled trash on the night before the regular trash pick-up day. Further, it appears from other documents in the record that Craig did not log the evidence he pulled from the trash into the evidence locker until January 20, 2010.

Discovery has been heated and protracted, and marked by several discovery motions requiring court intervention. Plaintiffs filed their motion for summary judgment on February 10, 2014, while Defendant filed his motion for summary judgment on May

30, 2014. (Dkt. 126, 158.) The Court dismissed Plaintiffs' motion for summary judgment,

finding that it did not meet the requirements of Fed. R. Civ. P. 56 or the Court's local rule

7.1. Order (Dkt. 166.)

Other litigation unrelated to this lawsuit progressed in Bankruptcy Court. On May

10, 2011, Plaintiff Leslie White filed a Chapter 7 petition under the Bankruptcy Code in

the District of Idaho. *In re White*, Case No. 11-01421-JDP (D. Idaho May 10, 2011).[1]

Question 21 of Schedule B asks whether the debtor has any other contingent or

unliquidated claim of any nature, and the estimated value of each. The question was left

blank. The Bankruptcy Court entered an order of discharge on August 24, 2011,

indicating there would be no distribution to unsecured creditors. (Bankr. Dkt. No. 29, 30.)

## DISPOSITION

**1.     Motion for Summary Judgment**

**A.     *Summary Judgment Standard***

One of the principal purposes of the summary judgment "is to isolate and dispose

of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

(1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by

which factually insufficient claims or defenses [can] be isolated and prevented from

going to trial with the attendant unwarranted consumption of public and private

resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the

---

[1] Defendant Craig submitted Plaintiff Leslie White's bankruptcy petition in support of his motion. *See* Aff. of McCarthy Ex. L (Dkt. 159-12). The Court takes judicial notice of the matter and other proceedings in White's bankruptcy case under Fed. R. Evid. 201(b).

parties will not defeat an otherwise properly supported motion for summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

To support their claim or defense, a party asserting that a fact cannot be or is genuinely disputed must cite to particular parts of materials in the record, including depositions, documents, affidavits or declarations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, an adverse party can

demonstrate that the other party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1)(B). An opposing party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, but the proponent of the evidence can show that the material is admissible, or can explain the admissible form anticipated. Fed. R. Civ. P. 56(c)(2); Official Cmt., 2010 Amendments to Subdivision (c). The Court has wide discretion under Rule 56, and may consider other materials in the record outside of the cited materials and, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may give the party an opportunity to properly support or address the fact. Fed. R. Civ. P. 56(e).

In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of the plaintiff's diary on summary judgment because at trial, the plaintiff's testimony of contents would not be hearsay). But documents which have not had a "proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc*., 854 F.2d 1179, 1182 (9th Cir. 1988).

**B.** ***White's Chapter 7 Bankruptcy Filing***

Craig asserts White is judicially estopped from asserting her claims here, for which she asserts damages of "millions" of dollars, because she failed to identify the

cause of action as an asset in her bankruptcy schedules. Craig contends that White knew of the claim prior to discharge, and therefore should not be permitted to assert it now. White argues she had no intention of filing this lawsuit at the time of her bankruptcy discharge, and as a pro se litigant, she did not know the potential for a lawsuit existed until the criminal charges against McNelis were dismissed on October 24, 2011.

White, understandably, misunderstands the timing of when her claim arose. Under the Bankruptcy Code, a "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The debtor's bankruptcy estate consists of all property, wherever located, and by whomever held, of all interests of the debtor at the time of the commencement of the case, or any interest in property that the estate acquires after the commencement of the case. 11 U.S.C. § 541(a). Such interests include a debtor's claim for damages against a third party. *See In re Pace*, 132 B.R. 655, 646 (Bankr. D. Alaska 1991) ("a debtor's claim for personal injuries is included as property of the estate whether the claim is unliquidated at the time of filing of a bankruptcy petition or is settled thereafter."); *Suter v. Goedert*, 396 B.R. 535, 542-43 and n.4 (Bankr. D. Nev. 2008) (legal causes of action existing at the time the bankruptcy petition is filed are considered property of the estate).

Judicial estoppel is an equitable doctrine which precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking an inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). The concept is not confined to the assertion of inconsistent positions in the

same litigation. *Hamilton*, 270 F.3d at 783. In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised or mentioned in the debtor's schedules or disclosure statements. *Id.*

Here, the record establishes Leslie White learned of the facts that led to the filing of this lawsuit no later than April 15, 2011, the date the state court district judge issued the order suppressing evidence from the January 6, 2010 search warrant. White filed her bankruptcy petition under Chapter 7 of the Bankruptcy Code on May 10, 2011, and received a discharge on August 24, 2011. All of the facts upon which this lawsuit is based occurred prior to White's bankruptcy filing. Although all facts were not known to White at the time of her bankruptcy filing, enough was known as of April 15, 2011, to require notice of the existence of the potential asset to the bankruptcy court. *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992). And, it is immaterial that White did not file this action against Craig until January 5, 2012, more than six months after she filed for bankruptcy. *See Hamilton*, 270 F.3d at 784 (imposing judicial estoppel when the debtor had knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but failed to amend his schedules).

The Court recognizes White is proceeding pro se, and she claims she did not know of the potential for a lawsuit until after October 24, 2011. But pro se litigants may not be treated more favorably than parties with attorneys representing them, and they are held to the same standard as represented litigants. *Jacobsen v. Filler*, 790 F.2d 1361, 1364 9th 1986). And, while the Ninth Circuit recognizes an inadvertence/mistake exception for

judicial estoppel, what matters is whether the plaintiff has knowledge of the underlying facts constituting the wrongdoing, not whether the wrongdoing necessarily gives rise to a legal cause of action. *Carr v. Beverly Health Care & Rehabilitation Servs., Inc.*, No. C-12-2980-EMC, 2013 WL 5946364 *5 (N.D. Cal. Nov. 5, 2013) (citing *Hamilton*, 270 F.3d at 784). The debtor need not know all facts or even the legal basis for the cause of action; rather, it is sufficient if the debtor has "enough information prior to confirmation to suggest that [she] may have a possible cause of action," which in turn triggers the requirement to disclose the cause of action on the debtor's bankruptcy schedules. *Hamilton*, 270 F.3d at 784-85 (quoting *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000)); *Carr*, 2013 WL 5946364 at *5. *See also Jethroe v. Omnaova*, 412 F.3d 598, 601 (5th Cir. 2005) ("to claim that her failure to disclose was inadvertent [plaintiff] must show not that she was unaware that she had a duty to disclose her claims but that, at the time she filed her bankruptcy petition, she was unaware of the facts giving rise to them.").

In this case, the Court finds undisputed that White asserted inconsistent positions. She failed to list her potential claim against Craig as an asset on her bankruptcy schedules, and then later sued on those claims. She claims damages of "millions" of dollars. All of the facts constituting White's claim occurred prior to the filing of her bankruptcy petition. And, it strains credulity for her to argue she did not know of her potential claim until after the state charges against McNelis were dismissed. Because her arguments here are based upon the state court's determination that the warrant was invalid, White knew of the potential for a lawsuit no later than April 15, 2011, the date

Judge Hanson issued his order suppressing the evidence in the state proceedings against McNelis. That she did not file her lawsuit until January 5, 2012, is immaterial under the facts. *Hamilton*, 270 F.2d at 784 (finding the plaintiff knew that a potential cause of action existed, even though he did not file his action for one year after filing for bankruptcy). White is required to have amended her disclosure statements and schedules to provide the requisite notice.

Nothing prevented White from disclosing her civil rights case to the bankruptcy court, either during the pendency of the bankruptcy proceedings, or even now. This is because a debtor must disclose any litigation, and may amend her schedules at any time as a matter of course before the bankruptcy case is closed. *Hay*, 978 F.2d at 557 (citing 11 U.S.C. § 1125(b) (debtor must provide claimants with a disclosure statement containing "adequate information") and Fed. R. Bankr. P. 1009(a)(schedules may be amended as a matter of course before case is closed)). Moreover, a debtor may move to reopen her case after discharge, file amended schedules, and allow the bankruptcy court to re-process the bankruptcy with the full and correct information. *See Ah Quin v. County of Kauai Dept. of Transportation*, 733 F.3d 267, 272 (9th Cir. 2013) (explaining that a key factor when considering application of judicial estoppel is whether the debtor reopens her bankruptcy proceedings and allows the bankruptcy court to administer an inadvertently omitted claim). White never reopened her bankruptcy case, despite knowing of the judicial estoppel bar to her claims here upon the filing of Craig's motion for summary judgment on May 30, 2014.

Accordingly, summary judgment is granted to Craig with respect to Plaintiff White's claim against him. That leaves only McNelis's claim against Craig.

### C.    *Res Judicata Does Not Apply to McNelis's Section 1983 Claim*

In the Amended Complaint, McNelis represents that the state court found no probable cause existed to support a reasonable belief that a crime had been committed so as to justify the search warrant. Am. Complaint ¶¶ 15-17 (Dkt. 35). Craig does not dispute (nor can he) that the state court granted Plaintiffs' motion to suppress and that the court found the evidence presented to the state court supported a finding that the mail and marijuana clippings were not retrieved from McNelis's trash can in the manner and on the dates described in the search warrant affidavit. Mem. Decision and Order Regarding Defendant's Motion to Suppress (Dkt. 126-2). But, rather than introduce evidence in a form admissible here, in the form of affidavits, declarations, or other admissible testimony, McNelis relies solely upon the state court's ruling to argue his claims survive Craig's motion for summary judgment. *See* Pls.' Mem at 9 (Dkt. 163) ("Based on the findings of the State Court Defendant Craig would not be able to obtain summary judgment on this claim.").

Section 1983 actions must afford full faith and credit to state judicial proceedings such that res judicata and other preclusion doctrines may operate to limit or exclude causes of action in federal court. *See Allen v. McCurry*, 449 U.S. 90, 103–104 (1980); *Strong v. Dep't of Corr.*, No. CV 04–581–C–EJL, 2006 WL 47358, at *2 (D. Idaho 2006) (citations omitted). "To determine whether a state judgment should have preclusive effect in a federal action, federal courts apply the state's rules governing preclusion." *Strong,*

2006 WL 47358, at *2 (citation omitted). The Idaho Supreme Court has stated that "[r]es judicata is comprised of claim preclusion (true res judicata ) and issue preclusion (collateral estoppel). Under principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Lohman v. Flynn*, 78 P.3d 379, 386 (Idaho 2003) (citations omitted); *see also Coeur d'Alene Tribe v. Asarco Inc.*, 280 F.Supp.2d 1094, 1117–19 (D. Idaho 2003) ("Although the literal definition of the term res judicata is expansive enough to cover both preclusion of relitigation of the same cause of action and relitigation of the same issue, the modern tendency is to refer to the aspect of the doctrine that precludes relitigation of the same issue in a separate cause of action as collateral estoppel, and to refer to that aspect preventing relitigation of the same cause of action as res judicata." (quotations and citations omitted)).

"Res judicata thus applies to protect litigants from the burden of litigating the same cause of action with the same party or its privity." *Coeur d'Alene Tribe*, 280 F.Supp.2d 1094, 1117–19 (D. Idaho 2003) (citing *Hindmarsh v. Mock*, 57 P.3d 803 (Idaho 2002)). Res judicata "bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." *Lohman*, 78 P.3d at 386 (citing *Hindmarsh*, 57 P.3d at 805 (citations omitted)).

For res judicata to preclude litigation, the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the

parties in the instant action must be the same as or in privity with the parties in the prior action in question. *Coeur d'Alene Tribe*, 280 F.Supp.2d at 1118 (citations omitted). "The purposes of these judicially created rules are to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." *Id.* (citation omitted).

As to collateral estoppel, the Idaho Supreme Court has delineated five factors that "must be considered in determining whether collateral estoppel will act as a bar":

> 1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; 2) the issue decided in the prior litigation was identical to the issue presented in the present action; 3) the issue sought to be precluded was actually decided in the prior litigation; 4) there was a final judgment on the merits in the prior litigation; and 5) the party against whom the issue is asserted was a party or in privity with a party to the prior litigation.

*Lohman*, 78 P.3d at 386 (citation omitted).

Defendant Craig argues the state court's ruling on Plaintiff's motion to suppress in the underlying criminal case has no preclusive effect here because there is no privity, as Craig was not a party to the state court proceedings and, therefore, did not have a full and fair opportunity to litigate the issues presented in that case. Defs.' Mem. at 27 n.1 (Dkt. 158-1 at 5). The Court agrees.

Officer Craig was not a party to the criminal case against McNelis. As such, Craig was not represented by counsel in those proceedings, had no individualized personal interest in the outcome of the criminal proceeding, had no control over the criminal proceeding, and was not bound by the outcome. *See e.g. Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir.2005) (applying Ohio state law); *Adams v. Nocon*, No. CV S–07–02083

FCD EFB, 2009 WL 799278, at *4 (E.D. Cal. Mar. 23, 2009). Because there is no privity between the state criminal case and this civil action, the Court finds that the underlying state court ruling on Plaintiff's Motion to Suppress has no preclusive effect in this case. *See Patrick v. Rivera*, No. 2:11–CV–00113–EJL–REB, 2013 WL 2945118 *4 (D. Idaho June 13, 2013) (finding state court ruling on plaintiff's motion to suppress in the underlying criminal case had no preclusive effect in plaintiff's civil rights case).

The Court's finding of a lack of preclusive effect has as its underpinning the different purposes of a civil versus a criminal matter. The process of deciding in a state criminal trial whether to exclude or admit evidence is not the equivalent of a Section 1983 proceeding. First, the remedy is different. In a civil suit, the litigant seeks damages. In the criminal matter, the exclusion of evidence may prevent a criminal conviction. Further, the trial court may view the contours of the defendant's Fourth Amendment rights differently than a jury may in a civil suit for damages. Finally, the issues are different. The issue decided in the criminal matter—that evidence must be suppressed because the omissions made were deliberate and material—is not identical to the issue of qualified immunity. In civil rights actions, qualified immunity turns on the objective unreasonableness of the law enforcement officer's conduct in light of clearly established law. But the state court, ruling in the context of a motion to suppress in the criminal proceeding, did not make such a determination. *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1121 (9th Cir. 1997).

This means McNelis may not rely upon the state court's ruling to prove his section 1983 claim against Craig. Instead, he must present evidence in a form that would be admissible in evidence at trial to defeat Craig's motion for summary judgment.

### D.    *Section 1983 and Qualified Immunity*

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, [...] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

For McNelis to prevail on his Section 1983 claim, he must show that (1) the actor that deprived him of his rights acted under color of law; and (2) the action actually deprived him of a constitutional right. In this case, the first requirement is not disputed. Officer Craig, who was carrying out his duty pursuant to a search warrant, acted under "color of law." Therefore, only the second requirement for a civil rights claim is at issue here.

McNelis contends his Fourth Amendment right regarding unlawful search and seizure was violated. Defendant Craig asserts McNelis has failed to carry his burden upon

summary judgment to show his constitutional rights were violated because McNelis has not presented sufficient evidence upon motion for summary judgment that would be admissible at trial. Alternatively, Craig argues that even if a Fourth Amendment right was violated, Officer Craig is entitled to qualified immunity. Each argument will be addressed in turn.

**(1)** *Evidentiary Issues*

Craig argues that none of the evidence McNelis has presented is in a form admissible upon summary judgment. Thus, the only admissible evidence is Craig's admission that he forgot to indicate the house was on South Cloverdale; misrepresented the trash pick-up date on December 29, 2009; and misrepresented the waste pick-up company as BFI instead of Allied Waste. Based upon those errors, Craig contends "sloppy police work" is insufficient to a substantial showing of deliberate disregard or reckless behavior required under *Franks*.

The Court agrees with Craig, and recognizes that the conflicting evidence about the trash pulls on the night of December 29, 2009, and the early morning hours of January 6, 2010, as well as the testimony concerning the McNelis's trash habits, was gleaned from the testimony contained in the transcript of the January 27, 2011, suppression hearing before Judge Hansen. The testimony, which the Court obtained from the written transcript, constitutes hearsay under Fed. R. Evid. 801, because it is a statement that the declarant (White and McNelis) did not make while testifying at the current hearing, and White and McNelis have offered the contents of the transcript (their testimony, as well as that of others who testified that day) to prove the truth of the matters

asserted therein---namely that the trash pulls did not occur in the manner Craig described. The contents of the transcript hearing do not meet any exception to the hearsay rule, as the transcript was not offered for impeachment or to contradict a prior inconsistent statement.

McNelis and White did not present affidavits or declarations, instead simply setting forth their "testimony" in the context of their memorandum. "An affidavit is a sworn declaration, normally attested to before a notary public, stating certain facts under oath." *Correa-Rivera v. Holder*, 706 F.3d 1128, 1131 (9th Cir. 2013) (quoting Black's Law Dictionary 62 (8th ed. 2004)). It is the oath that distinguishes an affidavit from a mere assertion of fact. Neither McNelis nor White filed an affidavit, instead purportedly relying upon the testimony they gave before Judge Hansen during the state court suppression hearing. Thus, the Court cannot treat McNelis's brief, and the contents of it referencing his and White's earlier testimony about the trash pulls, as an affidavit or declaration. Instead, the Court will liberally construe the filing as argument, rather than evidence, submitted in opposition to summary judgment. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (directing courts to liberally construe pro se filings).

But, the inquiry does not end there. Fed. R. Civ. P. 56(c)(2), (d), and (e) permit the Court some discretion upon summary judgment. The Court has discretion to consider the exhibits McNelis attached to his opposition to Craig's motion for summary judgment, as well as the exhibits Plaintiffs submitted in support of their earlier motion for summary

judgment. (Dkt. 126.)[2] In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because, at trial, plaintiff's testimony of contents would not be hearsay). The Court finds the exhibits submitted in opposition to Craig's motion for summary judgment, and elsewhere in the record, are either admissible or their contents could be presented in an admissible form at trial, and therefore they may properly be considered at the summary judgment stage.

Viewed in this light, the Court finds that Craig's evidentiary objections need not be resolved at this time. However, McNelis is cautioned that he will be required to present evidence and testimony at trial, before a jury, and be subject to cross-examination by Craig and his attorney. *See* Fed. R. Civ. P. 56(e) (allowing the court to provide an opportunity to properly support or address the fact when the opposing party did not assert a fact as required by Rule 56(c)).  For now, however, the testimony contained within the hearing transcript may be considered.[3]

---

[2] Further, the Court can take judicial notice of the fact that the state court issued its orders and submitted a reporter's transcript of the proceedings. Judicial notice would provide the requisite foundation, although the contents would still be hearsay as offered by Plaintiffs.

[3] Plaintiffs presented also an "amendment" to their pleadings in response to Craig's motion for summary judgment, attempting to ameliorate the lack of foundation for the exhibits submitted. (Dkt. 170, 174). Nothing was attached, however, to White's or McNelis's affidavits, which appear to be identical. Exhibits 1 and 2 are purportedly copies of Judge Hansen's written decisions on the motion to suppress and motion to reconsider; Exhibit 3 is a copy of Craig's affidavit for the search warrant; and Exhibit 4 is a copy of the court reporter's transcript of proceedings. These documents are already in the record, and were relied upon by the Court. (Dkt. 158-3 (Craig search warrant affidavit); Dkt. 126-2, 126-3, and 126-4). As explained, the fact that these particular documents exist are the proper subject of

(2)     *Qualified Immunity*

While Section 1983 provides a cause of action against police officers for constitutional violations that they might have committed, they are entitled also to qualified immunity from Section 1983 claims. Qualified immunity operates to "shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. at 231. "Qualified immunity operates to ensure that before [law enforcement officers] are subject to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The court in *Pearson* rejected the mandatory two-step approach that it had announced in *Saucier v. Katz*, 533 U.S. 194 (2001). *Pearson*, 555 U.S. at 236. That approach required courts to first decide if the defendant's "conduct violated a constitutional right," and then decide whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Courts are now free to decide either question in whatever order is most appropriate given the circumstances of each case.

Where a Section 1983 plaintiff challenges the issuance of a warrant based upon the assertions or omissions of the officer applying for that warrant, the United States

judicial notice. The other documents were not relied upon for purposes of deciding the motion. The Court therefore did not consider Craig's objection to Plaintiffs' attempt to amend their affidavits in opposition to Craig's motion for summary judgment.

Court of Appeals for the Ninth Circuit requires application of the rule announced in *Franks v. Delaware*, 438 U.S. 154 (1978). *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997) (noting the "*Franks* standard, although developed in a criminal context, also defines the scope of qualified immunity in civil rights actions"). "Franks established a criminal defendant's right to an evidentiary hearing when he made a showing of deliberate or reckless disregard for the truth in a search warrant affidavit and demonstrated that but for the dishonesty, the affidavit would not support a finding of probable cause." *Liston*, 120 F.3d at 972 (citing *Franks* at 171-72).

The qualified immunity analysis of whether an officer performed his duties reasonably turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted). But, a police officer who recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit "cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost." *Branch v. Tunell*, 937 F.2d 1382, 1387 (9th Cir. 1991). *See also Burke v. Town of Walpole*, 405 F.3d 66, 85 (1st Cir. 2005) ("It has long been well established that ... a material fabrication [in a warrant application] violates the Warrant Clause of the Fourth Amendment.").

Therefore, the burden a plaintiff must meet to survive a defendant police officer's motion for summary judgment on the ground of qualified immunity is to: "1) make a substantial showing of deliberate falsehood or reckless disregard for the truth, and 2)

establish that, but for the dishonesty, the challenged action would not have occurred." *Liston*, 120 F.3d at 973 (internal citations omitted). "Whether the alleged judicial deception was brought about by material false statements or material omissions is of no consequence." *Id.* To survive summary judgment on a claim of judicial deception, a plaintiff need not establish specific intent to deceive the issuing court. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (citing *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997)). Generally, the "question of intent or recklessness is a factual determination for the trier of fact," and "[c]lear proof of deliberate or reckless omission is not required." *Liston v. County of Riverside*, 120 F.3d 965, 974 (9th Cir. 1997). If a plaintiff makes the requisite showing to defeat summary judgment, "the matter should go to trial." *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995). In other words, if McNelis survives summary judgment, this matter will be tried before a jury. *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997)

Accepting, for purposes of this analysis, the version of the disputed facts most favorable to McNelis, he has shown the requisite intent and recklessness on the part of Defendant Craig regarding the alleged misrepresentations in the search warrant affidavit, which includes the reckless statement about the trash pulls. McNelis will purportedly be able to testify at trial that he did not put his trash can out for collection on December 30, 2009, because he and his family were out of town and it was otherwise contained within his yard behind a locked gate. Presumably, McNelis will be able to present testimony from White and White's daughter to that effect as well. McNelis can also testify, and be

subject to cross examination, about the contents of his trash can on January 5, 2010, and that he did not set out his trash can until approximately 7:15 a.m. on January 6, 2010.

Given the factual dispute about the veracity of the trash pulls, there is a disputed issue of material fact regarding whether Craig actually removed marijuana clippings and mail from McNelis's trash cans on either December 29, 2009, or January 6, 2010. If a jury believes McNelis's version of events, the jury could conclude Craig's false statements about the trash pulls included in the search warrant affidavit were done so intentionally or with reckless disregard for the truth.[4]

Accordingly, Plaintiffs have made a sufficient showing of a *Franks* violation to defeat Defendant Craig's motion for summary judgment on his qualified immunity defense. This matter will therefore proceed to trial. McNelis will be required to convince a jury that his version of events is more credible than Craig's version of events, and that Craig engaged in an elaborate conspiracy to falsify or plant evidence to support his search warrant affidavit.

### E.    *Damages*

Craig argues McNelis's recovery is limited to nominal damages in the amount of one dollar, because he has not established or introduced any proof of an actual injury. Craig contends McNelis has not produced sufficient evidence to support his damage claims for lost wages or benefits, which are based upon his claim that an average homemaker earns $113,586 per year, and he "lost" the ability to care for his daughter.

---

[4] The other implication here is that Craig pulled trash on the dates and at the times he indicated, but it could have been a neighbor's trash. If that was the case, Craig's statements would be true. Perhaps McNelis was using his neighbor's trash cans to dispose of his marijuana clippings. However, the Court cannot reach that conclusion, and it is up to the jury to determine the facts.

Second, Craig asserts McNelis has not provided evidence to support his claim for emotional distress caused as a proximate result of Craig's acts. Specifically, Craig points to the lack of any medical treatment for McNelis's purported anxiety, stress, and embarrassment. McNelis did not identify any expert witnesses to testify on his behalf, and issued a notice of withdrawal indicating he did not intend to present expert witness testimony. (Dkt. 152.)

On the issue of damages, the Court previously issued sanctions limiting the testimony and evidence McNelis could present. In its order granting sanctions, the Court stated the following:

> (1) Mr. McNelis will be barred from testifying or offering evidence in support of his claims that he has suffered special damages relating to the stay-at-home parent claim, (2) Ms. White will be barred from testifying or offering evidence in support of her claim of business losses, and (3) Plaintiffs will be barred from testifying or offering evidence of any mathematical calculations they utilized to measure their pain and suffering. Assuming the matter proceeds to trial, Plaintiffs will be limited to testifying personally as to any mental pain and anguish they may have endured as a proximate cause of Defendant's alleged conduct.

(Order, Dkt. 161 at 9.) Given the Court's findings in Section 1(B), above, regarding White's claims, only McNelis's damage claim survives. He may personally testify as to any mental pain and anguish he may have endured as a proximate cause of Craig's alleged conduct. But he is otherwise limited by the Court's Order.

Compensable injuries under § 1983 include "impairment of reputation, personal humiliation, and mental anguish and suffering." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1029 (9th Cir. 2008). The plaintiff's testimony alone can substantiate a jury's award of emotional distress damages. *Harper*, 533 F.3d at 1029. McNelis avers he

suffered mental pain and anguish. (Dkt. 163-1 at 3). He will be required to present evidence and testify about the adverse physical and emotional effects of the allegedly unsubstantiated search warrant.

Thus, the facts are disputed as to how to quantify the alleged pain and suffering McNelis suffered if the jury finds in favor of McNelis on his Section 1983 cause of action.[5] It will therefore be up to the jury to determine the monetary quantification of McNelis's pain and anguish endured as a proximate cause of Craig's alleged conduct.

Craig argued also that McNelis's claim for attorney fees should be dismissed because pro se litigants are not entitled to attorney fees under 42 U.S.C. § 1988. The Court declines to decide the issue at this juncture, as it is premature. The outcome at trial may eliminate the necessity of reaching a conclusion about McNelis's attorney fee claim.

## 2.      Motion for Contempt and Sanctions

McNelis has moved for sanctions against Craig for failing to comply with the Court's order to permit viewing of original documents. In the Court's order, defense counsel was required to "make available to Plaintiffs for viewing the originals of the documents identified in Plaintiffs' Request for Production No. 4." (Dkt. 161 at 13.) The Court further ordered that Plaintiffs would be permitted to view the originals at the appropriate Ada County office where the documents were held. (*Id*. at 12.) McNelis identified by Bates number six items, which Defendants located and produced.

---

[5] An award of $1.00 would be a potential outcome if McNelis proves his claim but fails to convince a jury that he suffered compensable damages.

On June 27, 2014, Sergeant Matthew Taddicken was present during the time Plaintiffs viewed the original documents at the Ada County Sheriff's Office. Aff. of Taddicken ¶ 13 (Dkt. 177-2.) Heather McCarthy and Amber Ellis, attorneys for the Ada County Prosecutor's Office, were present also. (*Id.*) Defendants provided the affidavit of Angela Lowber, property/evidence technician for the Ada county Sheriff's Office Records Department, who confirmed that the documents attached to Plaintiffs' motion are the documents from the Sheriff's Office identified as responsive to Plaintiffs' inspection request. Nontheless, Plaintiffs continue to argue that they were not permitted to view the "original" documents, and that the documents they were shown were not the "originals" and had been altered.

The parameters for document discovery are set forth in Fed. R. Civ. P. 34 and 37. A party is required to produce documents as they are kept in the usual course of business, and, if a request relates to electronically stored information but does not specify the form for producing it, the party must produce it in a form in which it is ordinarily maintained. Fed. R. Civ. P. 34(b)(2)(E). Rule 37 provides for sanctions. According to Fed. R. Civ. P. 37(b), the Court may impose sanctions only where a party fails to obey a court order to permit discovery.

Here, the Ada County Sheriff's Office permitted Plaintiffs to inspect their records on site, in the form that they were kept in the usual course of business. The inspection included the viewing of digitally stored photographs. McNelis does not dispute that he was permitted to meet Defendants at the Ada County Sheriff's Office to conduct the viewing. Lowber, the records custodian, stated that the documents attached to Plaintiffs'

motion are true and accurate copies of the records as they are kept in the Sheriff's Office. There is therefore no act of contempt, and no authority to impose sanctions pre Rule 37. Defendants permitted the Court ordered inspection as directed.

McNelis apparently objects to the authenticity of the documents he was shown under the Federal Rules of Evidence. Provided McNelis can establish relevance, McNelis will have an opportunity to object to the admissibility of evidence at trial, and to cross examine the records custodian to prove his theory that the records kept by the Sheriff's Office have been altered in some fashion. However, the Court is satisfied at this juncture that Lowber's testimony adequately explains the Sheriff's Office record keeping policy as it pertains to evidence records.

McNelis objects also to the affidavits of Taddicken and Lowber on the grounds that Taddicken has no personal knowledge of Craig's actions, and Lowber did not follow policy when she received the property. "An affidavit is a sworn declaration, normally attested to before a notary public, stating certain facts under oath." *Correa-Rivera v. Holder*, 706 F.3d 1128, 1131 (9th Cir. 2013) (quoting Black's Law Dictionary 62 (8th ed. 2004)). An affidavit must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant … is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Lowber states she is the evidence technician, has been employed in that position for nine years, and that she is familiar with Sheriff's Office record keeping policies. Taddicken sets forth in his affidavit that it is made upon his personal knowledge, he has been a police officer for seventeen years, and he is currently employed at the Ada County Sheriff's office. Taddicken stated he was personally present

during the inspection, and described how digital photographs are "booked" into evidence based upon his personal experience. Both affidavits satisfy Rule 56(c).

McNelis's objection is therefore not proper. He may, however, call witnesses or cross examine witnesses at trial to establish the alleged errors and inaccuracies in the witness's testimony, or come forward with his own witness testimony establishing the same. McNelis's motion for sanctions will be denied. The Court declines to award fees to Craig, finding no authority within Rule 37 under the circumstances presented, and declining to exercise its discretionary authority to do so.

## CONCLUSION

Plaintiff Leslie White may not maintain her claims against Craig because she is judicially estopped. White failed to disclose, or otherwise amend her bankruptcy schedules to notify her creditors of, the potential for this lawsuit despite knowledge of the facts giving rise to her claims in this suit prior to filing for bankruptcy. McNelis, however, may proceed to trial before a jury on his claim of judicial deception against Craig. He will be required, just like any other litigant, to present relevant and admissible evidence to prove his claims. And he will be required to prove to a jury by a preponderance of the evidence that Craig falsified evidence to support the affidavit requesting the search warrant. McNelis will be required also to prove his alleged emotional or nominal damages.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for Summary Judgment (Dkt. 158) is **GRANTED IN PART AND DENIED IN PART**.

2) Plaintiffs' Motion for Contempt and Sanctions (Dkt. 168) is **DENIED**.

3) The Court will conduct a telephonic status conference to discuss a trial setting with the parties. A separate notice of hearing is forthcoming.

Dated: November 26, 2014

Honorable Candy W. Dale
United States Magistrate Judge